IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JEAN M MEADOWS,

      Plaintiff,

v.                                                        CASE NO. 1:11-cv-00045-MP-GRJ

CITY OF INGLIS,
TIMOTHY LETSON,
BRANDON ROBERTS,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on defendants' Motion for Summary Judgment. (Doc. 47). Plaintiff has filed a response (Doc. 55) and therefore the motion is ripe for review. For the following reasons the motion is due to denied.

Defendants Letson and Roberts move for summary judgment on the grounds of qualified immunity as to the Fourth Amendment claim and for statutory immunity under Florida law as to the battery claim. Plaintiff, Jean Meadows, filed a civil rights action pursuant to 42 U.S.C. § 1983, along with state-based causes of action, against defendants, Timothy Letson, Brandon Roberts, and City of Inglis. Meadows alleges that Letson used excessive force in restraining her and that Roberts and City of Inglis were negligent in supervising and training subordinate officers.

The Amended Complaint discloses the following details as to the events in this case. Meadows was caring for a minor during the fourth of July celebrations. (Doc. 16 at 3). Just before midnight, she stopped at a bar, went in, and left the minor in the car for approximately ten minutes. (Doc. 16 at 3). Officer Letson and Sergeant Roberts

saw the unattended minor in the car and arrested Meadows for child neglect.  (Doc. 16 at 3).  The State Attorney's Office, however, declined to prosecute.  (Doc. 16 at 3).  During the arrest, Meadows informed the officers that she recently had shoulder surgery and asked them not to handcuff her behind the back.  (Doc 16 at 4).  Despite Meadows's request, Officer Letson, in view of Sergeant Roberts, handcuffed her behind the back.  (Doc 16 at 4).  Meadows alleges that Letson used such "excessive, improper and unprovoked force that he so twisted [her] arm as to cause a scaphoid fracture and severe pain and suffering."  (Doc 16 at 4).  As a result, Meadows has a fractured wrist, damage to her shoulder, and a permanent medical impairment.  (Doc 16 at 4).  Meadows filed a complaint, pursuant to 42 U.S.C. § 1983, against defendants for excessive force, battery, and negligent supervision and training.  (Doc 1 at 6).  Defendants, City of Inglis and Brandon Roberts, removed this case to federal court under 28 U.S.C. § 1331, federal question jurisdiction.  (Doc 1 at 2).

Defendants Letson and Roberts motion for summary judgment contains two parts.  Letson and Roberts ask the court to find that they are shielded from the 42 U.S.C. § 1983 excessive force suit by the doctrine of qualified immunity.  Defendant Letson further requests summary judgment on the state battery claim on the grounds that he did not commit a battery, and alternatively, that if he did commit a battery, he is shielded from suit in his personal capacity by Florida Statute § 768.28(9)(a).

The standard for summary judgment involved the following inquiry. Summary Judgment should be granted  "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The party moving for summary judgment has the burden of

demonstrating that no genuine issue as to any material fact exists and that it is entitled to judgment as a matter of law." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 523 (1994) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986). "The facts relied on by the movant must be viewed in the light most favorable to the non-moving party so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970). Summary judgment is inappropriate when there is sufficient evidence for a reasonable jury to return a verdict in the nonmoving party's favor. *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

## Qualified Immunity

The defense of qualified immunity protects government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738)). The doctrine balances the competing but equally important goals of affording officials immunity from suit for reasonable actions taken within the scope of their duties and holding those officials responsible who abuse their power. *Id.*

The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001) laid out a two step test for determining whether the actions of a government official fall outside the scope of qualified immunity. The Court held that in analyzing a qualified immunity case a court should first ask whether, "on the facts alleged, a constitutional

violation could be found." *Id.* at 206, 121 S. Ct. at 2159.  Next, the court must determine whether the violation alleged is clearly established in the law, such that a reasonable government official would be aware that he is bound by its prohibitions.  *Id.* at 202, 121 S. Ct. at 2156.  In *Pearson*, the Court receded slightly from its holding in *Saucier*, holding that a court may decide in its discretion "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  555 U.S. at 236, 129 S. Ct. at 818.

Following *Saucier*, the Court must first determine whether, on the facts alleged, a constitutional violation could be found.  533 U.S. at 206, 121 S. Ct. at 2159.  Meadows argues that by handcuffing her behind her back despite her request to be handcuffed in front and with knowledge of her injured shoulder, Letson used excessive force.  (Doc. 55 at 5).  She further alleges that Letson actions while handcuffing her were excessive in that Letson broke Plaintiff's wrist, and that his demeanor indicated that he wanted to hurt her.  (Doc. 55 at 4).  Plaintiff alleges that Roberts was supervising the arrest and failed to intervene.  (Doc. 55 at 4).  The evidence does not show that Meadows was resisting arrest in a way that would cause the officers to view her as a threat.  Viewing the facts in a light most favorable to Meadows, it could be found that Letson and Roberts violated her Fourth Amendment right to be free from excessive force during arrest.

Next, the Court must determine whether Meadows's Fourth Amendment right was clearly established at the time, such that a reasonable police officer would have known of its constraints on his actions.  *Id.* at 202, 121 S. Ct. at 2156.  Meadows

alleges that a reasonable officer in Letson's and Roberts's position would have known that Letson's actions were excessive in light of the circumstances.  (Doc. 55 at 5).

The Eleventh Circuit has held that "[a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right, . . . (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, . . . or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009).  While few cases exist in any Circuit presenting indistinguishable facts to the instant case, a long history of case law clearly establishes a constitutional right to be free of excessive force during arrest.  *See Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006); *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998); *Graham v. Connor*, 490 U.S. 386, 386, 109 S. Ct. 1865, 1865 (1989).

What actions constitute excessive force depends on the circumstances of the arrest.  Relevant factors include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Davis*, 451 F.3d at 767. The arresting officer's knowledge of a significant pre-existing injury of the suspect can also affect the analysis of whether a particular action by the officer is excessive.  *See Rodriguez v. Farrell*, 294 F.3d 1276, 1278 n.3 (11th Cir. 2002) (expressing willingness to consider the arresting officer's knowledge of a pre-existing injury in the excessive force analysis); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993) ("An

excessive use of force claim could be premised on [the officer's] handcuffing [plaintiff] if he knew that she had an injured arm and if he believed that she posed no threat to him"); *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009) (holding that the existence of plaintiff's gunshot wounds at the time of arrest and the officer's knowledge thereof affected the analysis of whether the officer's method of handcuffing him constituted excessive force).

In the instance case, there is no evidence that Meadows posed a threat to the arresting officers or that she was resisting arrest or attempting to flee.  The crime at issue was a non-violent one and probably would not have lead a reasonable officer to view Meadows as a threat.  Further, there is evidence that the officers were aware of Meadows's injury.  Meadows claims that she told the officers repeatedly about her wounded shoulder and asked to be handcuffed with her hands in front.  (Doc. 55 at 3). Meadows claims that at the time of the arrest there was visible evidence of her surgery as well as stiffness that made handcuffing noticeably more difficult.  (Doc. 55 at 6).  It appears that Meadow offered to have her husband, who lived nearby, verify her story. (Doc. 55 at 3).  Further, the arrest resulted in the fracturing of Meadows's wrist, apparently as a result of Letson twisting her arm.  (Doc. 55 at 4).  Meadows also alleges that Letson's demeanor suggested that he was angry and intended to hurt her.  (Doc. 55 at 4).  Viewing the evidence in a light most favorable to Meadows – as the Court is required to do in ruling on a motion for summary judgment –  a reasonable jury could conclude that in handcuffing Meadows, Letson used a level of force that a reasonable officer would have known to be excessive in light of the circumstances.  A reasonable jury could also conclude that Roberts unreasonably failed to intervene and stop this use

of force.  Qualified immunity should not apply when a plaintiff has pled, and the facts of

record support, the violation of the plaintiff's well established constitutional right.

Determination of whether such a violation actually occurred is for the fact finder and is

inappropriate for summary judgment.

### State Law Battery Claim

Letson further asks the court to grant summary judgment as to Meadows's

Florida state law battery claim against.  Letson argues that 1) no battery occurred and

2) if a battery occurred, Letson is shielded by Florida Statute § 768.28(9)(a), which

states:

> No officer, employee, or agent of the state or of any of its subdivisions
> shall be held personally liable in tort or named as a party defendant in any
> action for any injury or damage suffered as a result of any act, event, or
> omission of action in the scope of her or his employment or function,
> unless such officer, employee, or agent acted in bad faith or with
> malicious purpose or in a manner exhibiting wanton and willful disregard
> of human rights, safety, or property.

Fla. Stat.§ 768.28(9)(a).

Under Florida law, "a presumption of good faith attaches to an officer's use of

force in making a lawful arrest and an officer is liable for damages only where the force

used is clearly excessive."  *City of Miami v. Sanders*, 672 So. 2d 46, 46 (Fla. Dist. Ct.

App. 1996).  "If excessive force is used in an arrest, the ordinarily protected use of force

by a police officer is transformed into a battery."  *Id.*  "A battery claim for excessive force

is analyzed by focusing upon whether the amount of force used was reasonable under

the circumstances."  *Id.*  As discussed above, sufficient facts exist whereby a

reasonable jury could determine that Letson's actions were not reasonable under the

circumstances.  Further, it cannot be said as a matter of law that Letson did not act "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard for . . . [Meadows's] safety."  Fla. Stat. § 768.28(9)(a).  The record contains evidence that would allow a reasonable jury to determine that Letson acted in a manner willfully disregarding Meadows's safety.  According to Meadows, Letson handcuffed her in an injurious way despite repeated warnings about her injured shoulder and restricted motion.  (Doc. 55 at 3, 6).  She further stated that she believes Letson's actions and demeanor indicated that he wanted to hurt her out of anger.  (Doc. 55 at 4).  For these reasons, it would not be appropriate to rule as a matter of law that 1) Letson did not commit a battery or 2) his behavior was within the bounds of the statutory shield of Florida Statute § 768.28(9)(a).  The Court makes no judgment as to the strength or credibility of any of the evidence except to say that it would not preclude a reasonable jury from returning a verdict for the plaintiff.

## Recommendation

Accordingly, for the foregoing reasons, it is respectfully **RECOMMENDED** that defendants Letson and Roberts's motion for summary judgment (doc. 47) be **DENIED**.

**IN CHAMBERS** this 26th day of January, 2012.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.